**VEDDER PRICE (CA), LLP**
DEBORAH A. HEDLEY (SB# 276826)
dhedley@vedderprice.com
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T: +1 424-204-7700, F: +1 424-204-7702

**VEDDER PRICE P.C.**
BRYAN K. CLARK
(motion to appear *pro hac vice* forthcoming)
bclark@vedderprice.com
222 N. LaSalle Street
Chicago, Illinois 60601
T: +1 312-609-7500, F: +1 312-609-5005

*Attorneys for plaintiff A Plus Tree, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A PLUS TREE, INC., <br><br> Plaintiff, <br><br> v. <br><br> ATLAS TREE SURGERY, INC. and GRACE KIDD, <br><br> Defendants. | Case No. 3:21-cv-1949 <br><br> **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES:** <br><br> **(1) VIOLATION OF COMPUTER FRAUD AND ABUSE ACT** <br> **(2) VIOLATION OF CAL. PENAL CODE § 502** <br> **(3) VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW** <br> **(4) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS** <br> **(4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS** <br> **(6) CONVERSION** <br><br> **DEMAND FOR JURY TRIAL** |

A Plus Tree, Inc. ("A Plus"), by and through its attorneys, files this Complaint against defendants Atlas Tree Surgery, Inc. ("Atlas") and Grace Kidd ("Kidd") for (1) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; (2) violation of California Penal Code § 502; (3) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200-17209; (4) intentional interference with contractual relations; (5) intentional interference with prospective economic relations; and (6) conversion. In support of its Complaint, A Plus states as follows:

## INTRODUCTION

1. A Plus is a leading provider of urban forest management and sustainability services.

2. Kidd is a former A Plus employee who left A Plus in July 2020 and went to work as Regional Manager for Atlas.

3. Atlas is a direct competitor of A Plus, often bidding for the same jobs and pitching for the same clients.

4. Since leaving A Plus, Kidd has illegally connected with A Plus's systems **169 times**, accessing 215 client proposals with a total bid value of nearly $1.4 million.

5. To be clear, access to this information was **not** provided to Kidd by the clients — clients have told A Plus that Kidd has used confidential information in conversations with them that she should not have had access to, and they expressed confusion about how she came to be in possession of that information.

6. By viewing confidential bid and proposal information, Kidd was able to leverage A Plus's proprietary bids and proposals for the benefit of Atlas and facilitate Atlas's unlawful competition with A Plus. Indeed, there is evidence that Atlas has persuaded A Plus clients to switch to Atlas after Kidd accessed this confidential information.

7. A Plus now files this Complaint to hold Atlas and Kidd responsible for their unlawful anticompetitive behavior, put an end to their unlawful trade practices, and recover damages and fees.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the CFAA presents federal questions.

9. The Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367 because they arise out of the same case or controversy.

10. A Plus is a California corporation with its principal place of business in Pleasant Hill, California.

11. Atlas is a California corporation with its principal place of business in Concord, California.

12. Kidd is a citizen of the state of California.

13. This Court has personal jurisdiction over Atlas and Kidd because all of the defendants are citizens of California.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## INTRADISTRICT ASSIGNMENT

15. This matter is properly assigned to the San Francisco or Oakland Divisions because a substantial part of the events or omissions which give rise to A Plus's claims arose in Contra Costa County.

## FACTUAL BACKGROUND

### Kidd's unlawful acts, for the benefit of Atlas

16. In July 2017, Kidd began working for A Plus as a urban forest manager.

17. During Kidd's employment, she routinely used the same IP address to access A Plus's systems while working remotely from her home.

18. Kidd's last day of employment with A Plus was on July 7, 2020 and her last day with access to A Plus systems was on July 5, 2020.

19. In the final hours of her employment, Kidd accessed 22 proposals in a four-hour period, including accessing 13 proposals in about 16 minutes.

20. On information and belief, Kidd accessed those proposals so that she could copy the direct links to those proposals onto her computer for future use after her access to the system was terminated.

21. Shortly thereafter leaving A Plus, Kidd began working as a Regional Manager for Atlas.

22. Almost immediately upon her departure from A Plus, the same IP address that Kidd had used to work remotely while she was an employee began to access confidential bid and proposal information on A Plus's systems.

23. In total, this IP address has accessed information related to 33 A Plus individual user accounts, 123 properties, and 24 client companies, with the most recent access attempt occurring on February 25th, 2021.

24. Among the proposals improperly accessed by this IP address were the 22 proposals that Kidd accessed during her final hours as an A Plus employee.

25. The IP address has connected illegally with A Plus systems **226 times** since Kidd's separation, granting access to 1,212 client proposals with a total bid value in excess of $12 million.

26. Even after A Plus became aware of the issue and blocked the IP address, attempts to access the system continued.

27. The confidential nature of the documents accessed by Kidd — including pricing structures, proprietary business processes, individualized tree data, and history of care — enabled her and Atlas to unlawfully compete with A Plus.

28. By virtue of her employment with A Plus (including execution of a confidentiality agreement), Kidd *knew* that these documents contained confidential, proprietary information that she should not have accessed on behalf of a competitor.

29. A Plus clients have noted that Kidd has used confidential information in conversations with them that she should not have had access to, and they expressed confusion about how she came to be in possession of that information.

30. On information and belief, Kidd and another former A Plus employee have opened new sales territories for Atlas based on their use of confidential information stolen from A Plus.

31. A Plus had contractual agreements with many of the clients about which Kidd unlawfully obtained confidential information with the intent to convert those clients to Atlas.

32. For example, A Plus had a four-year tree care contract with CJM Association Services, but that client has now moved to Atlas.

33. Additionally, various other customers and potential customers moved from A Plus to Atlas shortly after Kidd's arrival at Atlas, including, but not limited to, Pacific Capital, FPI Management, CJM Association Services, Avanath, The Arbors Greystar, Academy Lane , FPI Management, Harlow by Conam, and Rancho Verde Mobile Home Parks.

34. These and other business developments (including Atlas' expansion into new markets) are directly related to the unauthorized access to A Plus data.

35. Accessing and obtaining proprietary pricing models through A Plus proposals means that Atlas could interfere with contractual relationships beyond just the area where Kidd works because many A Plus clients manage properties throughout Northern California.

36. Kidd's conduct in accessing these confidential documents is within the scope of her employment for Atlas.

37. Atlas knew or should have known about Kidd's conduct.

38. On information and belief, Kidd's conduct in accessing these confidential documents was directly authorized or tacitly endorsed by Atlas.

39. A Plus is continuing to evaluate its damages, but the actual monetary damages from the improper access to confidential information exceed $4 million.

## COUNT I – VIOLATION OF SECTION 1030(A)(2)(C) OF CFAA

### (Against Kidd and Atlas)

40. A Plus incorporates Paragraphs 1-39 by reference as if fully set forth herein.

41. The CFAA provides a private cause of action against anyone who intentionally accessed a computer without authorization or exceeded her authorized access to obtain information from a protected computer. *See* 18 U.S.C. § 1030(a)(2)(C).

42. The CFAA defines a "protected computer" as a computer "which is used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B).

43. The CFAA allows for a private cause of action if there is a "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i).

44. A Plus's computer systems are used in and affect interstate commerce by allowing for bids and proposals in multiple states.

45. Since leaving A Plus, Kidd has accessed information related to 33 A Plus individual user accounts, 123 properties and 24 client companies.

46. Kidd has connected to the A Plus systems without authorization 226 times since her separation, granting access to 1,212 client proposals with a total bid value in excess of $12 million.

47. Even if Kidd and Atlas could argue that their access was authorized by relationships with certain clients who provided Kidd with links to their proposals on the A Plus system, Kidd clearly exceeded any allegedly authorized access by

accessing documents related to clients that had *not* provided her with information about their relationships with A Plus.

48. Moreover, it is evident that Kidd prepared to access materials in this fashion by accessing 22 proposals in the final hours of her employment so that she could, on information and belief, copy the links for later use.

49. All of Kidd's actions were done within the scope of her employment, and Atlas either knew our should have known that Kidd was accessing confidential information in this fashion.

50. On information and belief, Atlas either directly authorized or tacitly endorsed Kidd's conduct.

51. A Plus has suffered — and continues to suffer — losses in excess of $5,000.00 in a one-year period, including, without limitation, the costs of investigating the incident, and the costs of internal time spent ensuring that Kidd's access to the system was terminated.

52. As a result of these wrongdoings, A Plus has suffered monetary damages and has suffered substantial and irreparable injury and is threatened with further substantial and irreparable injury, for which there is no adequate remedy at law to compensate because A Plus has no means of determining what other documents and data Kidd may have viewed or manipulated without consent.

WHEREFORE, A Plus prays for injunctive relief, compensatory damages, costs, and prejudgment interest against Kidd and Atlas for their unauthorized access to A Plus's computer systems, and for such other relief as the Court deems just and proper.

### COUNT II – VIOLATION OF CALIFORNIA PENAL CODE § 502
### (Against Kidd and Atlas)

53. A Plus incorporates Paragraphs 1-39 by reference as if fully set forth herein.

54. California Penal Code § 502(c)(1) makes it unlawful for an individual to knowingly access and without permission use any data, computer, computer system, or computer network to wrongfully control or obtain data.

55. Kidd violated this provision through her unlawful access to A Plus's computer system to wrongfully obtain confidential business information.

56. California Penal Code § 502(e)(1) provides a civil remedy to the owner of any computer system who suffers damage by reason of a violation of any provision of subdivision (c).

57. A Plus has been damaged by Kidd's violations of the California Penal Code § 502 in an amount of at least $4 million.

58. All of Kidd's actions were done within the scope of her employment, and Atlas either knew our should have known that Kidd was accessing confidential information in this fashion.

59. On information and belief, Atlas either directly authorized or tacitly endorsed Kidd's conduct.

WHEREFORE, A Plus prays for compensatory damages, costs, prejudgment interest, and attorneys' fees against Kidd and Atlas for their unauthorized access to A Plus's computer systems, and for such other relief as the Court deems just and proper.

## COUNT III – VIOLATION OF THE UCL
### (Against Atlas)

60. A Plus incorporates Paragraphs 1-39 by reference as if fully set forth herein.

61. Atlas's conduct, through its employee Kidd, as alleged herein, constitutes unlawful, unfair acts and/or deceptive business practices and unfair competition in violation of California Business & Professions Code §§ 17200 *et seq*.

62. Atlas engaged in such conduct without privilege, justification or excuse.

63. Atlas's conduct, as alleged herein, is unlawful because it constitutes violations of multiple laws, including the CFAA, and California Penal Code § 502.

64. Atlas' conduct is also unfair because it is unethical and unscrupulous. Atlas engaged in the conduct alleged herein to, among other things, undermine A Plus's ability to conduct its business and service its clients' needs in order to better position itself to improperly solicit A Plus's clients and to otherwise unfairly compete with A Plus.

65. Kidd, as a former A Plus employee, knew that they these proposals contained confidential information that would give Atlas an unfair competitive advantage, yet she accessed them anyway on behalf of Atlas.

66. The foregoing misconduct constitutes unlawful, unfair and deceptive business practices and unfair competition in violation of California Business & Professions Code §§ 17200 *et seq*., and as a direct and proximate result of such unlawful, unfair and deceptive business practices and unfair competition, A Plus has sustained severe, immediate and irreparable harm, damage and injury, which entitles A Plus to restitution, disgorgement and/or damages, and such other relief permitted under California Business & Professions Code §§ 17200 *et seq*.

67. As a further direct and proximate result of Atlas's unlawful, unfair and deceptive business practices and unfair competition, Atlas has been unjustly enriched by, among other things, unfairly competing and deriving economic benefit therefrom at the expense of A Plus.

WHEREFORE, A Plus prays for injunctive relief, restitution, disgorgement, costs, and prejudgment interest against Atlas for its unlawful, unfair, and fraudulent competitive conduct, and for such other relief as the Court deems just and proper.

## COUNT IV – INTENTIONAL INTERFERENCE
## WITH CONTRACTUAL RELATIONS

### (Against Atlas)

68. A Plus incorporates Paragraphs 1-39 by reference as if fully set forth herein.

69. A Plus had a variety of long-term contracts and business relationships, including, but not limited to, a four-year tree care contract with CJM Association Services and business with The Arbors Greystar and Avanath. These clients represent multiple properties across multiple regions that extend past Sacramento.

70. At all relevant times, Atlas, either independently or through its employee, Kidd, knew of the existence and nature of these contracts between A Plus and its customers.

71. Atlas's conduct prevented performance or made performance of these contracts more difficult, by using unlawfully obtained confidential proposal and bid information to unfairly compete with A Plus and by causing clients to question how Atlas had access to confidential information about them.

72. Atlas intended to disrupt the performance of these contracts, and/or knew that disruption of performance of these contracts was certain or substantially certain to occur.

73. Atlas committed its interference via malice, oppression, and fraud, including by impermissibly accessing and using A Plus's confidential information obtained to interfere with A Plus's contracts with its customers.

74. As a result of the foregoing, A Plus has suffered damages in the amount of at least $4 million.

WHEREFORE, A Plus prays for compensatory damages, punitive damages, costs, and prejudgment interest against Atlas for its tortious interference, and for such other relief as the Court deems just and proper.

# COUNT V – INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

## (Against Atlas)

75. A Plus incorporates Paragraphs 1-39 by reference as if fully set forth herein.

76. At all relevant times, A Plus maintained prospective economic relationships with customers and potential customers that likely would have resulted in an economic benefit to A Plus.

77. At all relevant times, Atlas, either independently or through its employee, Kidd, knew of the existence and nature of these prospective economic relationships between A Plus and its customers and potential customers.

78. Atlas engaged in purposeful, wrongful conduct, independently wrongful from the interference itself, including by accessing A Plus's confidential information through unlawful means, including by violating the CFAA and California Penal Code § 502.

79. By engaging in this conduct, Atlas intended to disrupt A Plus's relationships and/or knew that disruption of these relationships was certain or substantially certain to occur.

80. A Plus's prospective economic relationships with its customers and potential customers were disrupted, and several customers and potential customers have since given their business to Atlas, including, but not limited to, Pacific Capital, FPI Management, CJM Association Services, Avanath, The Arbors Greystar, Academy Lane, FPI Management, Harlow by Conam, and Rancho Verde Mobile Home Parks.  In many cases, the above companies manage multiple properties each and extend to regions well outside Sacramento.

81. A Plus's prospective economic relationships with its customers and potential customers also were disrupted because A Plus clients have now questioned how confidential information about them came to be in Atlas's possession.

Case 3:21-cv-01949-TSH   Document 1   Filed 03/19/21   Page 12 of 13

82. Atlas committed its interference via malice, oppression, and fraud, including by impermissibly accessing, and using A Plus's confidential information obtained to interfere with A Plus's prospective economic advantage.

83. As a result of the foregoing, A Plus has suffered damages in the amount of at least $2 million.

WHEREFORE, A Plus prays for compensatory damages, punitive damages, costs, and prejudgment interest against Atlas for its intentional interference, and for such other relief as the Court deems just and proper.

## COUNT VI – CONVERSION
### (Against Kidd)

84. A Plus incorporates Paragraphs 1-39 by reference as if fully set forth herein.

85. At all relevant times, A Plus was the sole owner of the confidential bid and proposal information stored on its computer systems.

86. Kidd substantially interfered with A Plus's Property by knowingly or intentionally taking possession of the confidential bid and proposal information, and refusing to return the confidential bid and proposal information after A Plus demanded its return, unlawfully converting A Plus's property for her own benefit and for the benefit of Atlas.

87. A Plus did not consent to Kidd's actions.

88. As a result of Kidd's conversion, A Plus has suffered damages in an amount to be proven at trial.

WHEREFORE, A Plus prays for compensatory damages, costs, and prejudgment interest against Atlas for its tortious interference, and for such other relief as the Court deems just and proper.

Attorneys at Law
Los Angeles

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Dated: March 19, 2021              A PLUS TREE, INC.


By: */s/ Deborah A. Hedley*
Deborah A. Hedley

**VEDDER PRICE (CA), LLP**
DEBORAH A. HEDLEY (SB# 276826)
dhedley@vedderprice.com
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T:  +1 424-204-7700
F:  +1 424-204-7702

**VEDDER PRICE P.C.**
BRYAN K. CLARK
(motion to appear *pro hac vice* forthcoming)
bclark@vedderprice.com
222 N. LaSalle Street
Chicago, Illinois  60601
T: +1 312-609-7500
F: +1 312-609-5005